# Pursglove, Appellant, *v.* Monongahela Ry.

*Negligence—Railroads — Yard brakeman — Federal Employer's Liability Act—Nonsuit—Appliances—Interstate commerce—Res ipsa loquitur—Reasonably safe appliances — Custom — Assuming risk—Experts—Federal Boiler Inspection Act of February 17, 1911, 36 Stat. L. 913, as amended by Act March 4, 1915, 38 Stat. L. 1192; Safety Appliance Acts March 2, 1893, 27 Stat. L. 531, and April 14, 1910, 36 Stat. L. 298, and Federal Employers' Liability Act April 22, 1908, 35 Stat. L. 65, as altered by Act of April 5, 1910, 36 Stat. L. 291—Violation of statutes—Prescription—Proximate cause.*

1. Where a yard brakeman of a railroad company is employed in transferring cars just arrived from another state, he is engaged in interstate commerce.

2. The Federal Boiler Inspection Act of February 17, 1911, 36 Stat. L. 913, as amended by Act March 4, 1915, 38 Stat. L. 1192, must be read in connection with Safety Appliance Acts of March 2, 1893, 27 Stat. L. 531, and April 14, 1910, 36 Stat. L. 298, and Federal Employers' Liability Act April 22, 1908, 35 Stat. L. 65, as altered by the Act April 5, 1910, 36 Stat. L. 291.

3. Under these acts, ordinarily the lack of due care must be affirmatively proven before a recovery may be had.

4. If a violation of the provisions of the statutes appears, negligence is presumed, and a recovery can be had if the defect was the proximate cause of the injury.

5. But in the absence of proof of disregard of the legislative duty, negligence must be affirmatively shown, for it is not to be taken for granted from the fact that an accident happened.

6. Where the negligent act proven is one forbidden, then a recovery may be had without regard to the ordinary rule that the servant assumes the risk of his employment; but this principle is still applied where no such violation is established.

7. In an action by a brakeman engaged in interstate commerce against a railroad company, his employer, for injuries alleged to have been caused by an improper appliance, a nonsuit is properly

entered where it appears there was no lack of compliance with the statutory duty, that negligence was not established and that the risk was an ordinary one assumed by the plaintiff.

8. The only duty imposed by the statutes on a railroad company, is to furnish appliances reasonably safe and suitable, and not to provide the latest and best, or to abandon those which have been efficient.

9. A witness for plaintiff will not be permitted to testify that he had not before seen the appliance by which plaintiff was alleged to have been injured, installed in like manner, where there is no offer to show by him that the arrangement of the appliance was dangerous, or to prove the practice and custom of other railroad companies.

Argued October 9, 1925. Appeal, No. 135, March T., 1925, by plaintiff, from order of C. P. Allegheny Co., Oct. T., 1923, No. 1034, refusing to take off nonsuit, in case of William F. Pursglove v. Monongahela Ry. Co. Before Moschzisker, C. J., Frazer, Simpson, Sadler and Schaffer, JJ. Affirmed.

Trespass under Federal Employers' Liability Act and Safety Appliance Act, for personal injuries. Before Carpenter, J.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned* was, inter alia, order, quoting record.

*William F. Marsteller,* with him *William L. Jacob* and *Anderson, Lamb & Jenkins,* for appellant.—Not only the Federal Act of 1908 applies in the instant case but also the Safety Appliance Statute of 1911 known as the Federal Boiler Inspection Act.

The case was for the jury: Baltimore & O. R. R. Co. v. Groeger, 288 Fed. 321; Great N. R. R. v. Donaldson, 246 U. S. 121; St. L., I. M. & S. R. R. Co. v. Taylor, 210 U. S. 281; Texas & P. R. R. Co. v. Rigsby, 241 U. S. 33.

Experts are not permitted to state their opinion in matters of common knowledge: Milwaukee, etc., Ry. v. Kellog, 94 U. S. 469.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellee.—Under the Federal Employers' Liability Act, proof of negligence is still required, as indicated by the following cases: Seaboard Air Line v. Horton, 233 U. S. 492; Southern Ry. v. Gray, 241 U. S. 333; New Orleans, etc., Ry. v. Harris, 247 U. S. 367.

OPINION BY MR. JUSTICE SADLER, November 23, 1925:

Pursglove was employed by the defendant company as a yard brakeman, and aided in moving cars from one track to another to make up new trains, or to combine with others for further transportation. On April 25, 1922, when the accident complained of occurred, plaintiff stood on the front of an engine, traveling at a slow rate toward a switch, intending to pass over it, and transfer certain cars which had just arrived from West Virginia. Admittedly, the employee was then engaged in interstate commerce, a claim advanced by the railroad company to defeat an award by the Workmen's Compensation Board, and the facts clearly indicated plaintiff was so occupied at the time in question: McNeill v. Director General, 272 Pa. 525.

The switching engine had attached in front a head log, and to it a foot board was held in place by brackets. Two nuts, measuring seven-eighths of an inch each, were used as fasteners, leaving the thread end of the bolt extending beyond for a short distance, variously estimated at from one-half to two inches. Pursglove was standing on the right side, and stepped from the moving engine when it came opposite the office of the company, intending to secure a drink of water there, and then pass across to the train which was to be transferred. In descending from the foot board, his raincoat caught on the end of the protruding bolt, resulting in a fall. He was

dragged from ten to thirty feet before being released, and the injury, for which damages are now claimed, was inflicted. Suit was brought to recover "by virtue of the Federal Liability Act of April 27, 1918" (doubtless the intention was to refer to the Act of April 22, 1908), and, on the trial, it was insisted there had been a violation of its provisions, and also of the Boiler Inspection Act of February 17, 1911, as amended on March 4, 1915, so as to include not only boiler locomotives, and their appurtenances, but tenders used in connection therewith. A compulsory nonsuit was entered by the learned court below upon completion of the plaintiff's case, and the motion to remove it was subsequently denied. From this action this appeal has been taken.

In four particulars, the defendant was charged, in the statement of claim, with negligent conduct. It was averred that the bolts were not properly inspected, should not have been fastened with two nuts, and, if properly installed, would have been countersunk, or reversed, so that the smooth head should have been on the outside in front. All of these may be dismissed without comment, since no evidence was submitted which established any lack of due care as to the matters set forth. In passing, it may be noticed that the rules promulgated by the Interstate Commerce Commission, pursuant to the authority granted by the Safety Appliance Act, as amended, directed,—in the cases where the location of bolts was deemed necessary of regulation,—that nuts attached to bolts shall be on the outside, evidently to provide for easier and more thorough inspection. Where locomotives are used in switching service, as here, it is expressly required that foot boards shall be securely bolted to metal brackets each of which shall be fastened to "buffer-beam, end-sill or tank-frame by not less than two seven-eighths inch bolts" (2 Roberts Federal Liability of Carriers 1625), and the compliance with this duty imposed cannot be said to constitute negligence.

The last defect alleged is that the end of the bolt was "sheared off and jagged,"—a fact not proven,—as a result of which the coat of plaintiff was caught, and plaintiff thrown to the ground and dragged. There was evidence that the thread of the bolt extended beyond the nut, and to this extent only was the charge supported. We are now asked to say that this condition disclosed was a violation of the legislation enacted for the protection of railroad employees, and that the proof of it sufficed to establish liability.

The Boiler Inspection Act of 1911, as amended in 1915, must be read in connection with the Safety Appliance Acts of March 2, 1893, and April 14, 1910, and the Federal Employers' Liability Act of April 22, 1908, as altered on April 5, 1910: B. & O. R. R. Co. v. Groeger, Ad. Op., Feb. 2, 1925, p. 164. Ordinarily, the lack of due care must be affirmatively proven before a recovery may be had: Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 58 L. ed. 1062. If, however, a violation of the provisions of the statutes referred to appears, then negligence is presumed (R. R. Co. v. Rigsby, 241 U. S. 33, 60 L. ed. 877; Director General v. Ronald, 265 Fed. R. 138), and a recovery can be had if the defect was the proximate cause of the injury: Davis v. Wolfe, 263 U. S. 239, 68 L. ed. 284. But, in the absence of proof of disregard of the legislative duty, negligence must be affirmatively shown, for it is not to be taken for granted from the fact that an accident has happened: Sullivan v. B. & O. R. R. Co., 272 Pa. 429.

Likewise, where the negligent act proven is one forbidden, then a recovery may be had without regard to the ordinary rule that the servant assumes the risk of his employment, but this principle is still applied where no such violation is established: Pryor v. Williams, 254 U. S. 43, 65 L. ed. 120; Great Northern Ry. Co. v. Donaldson, 246 U. S. 121, 62 L. ed. 616; Boldt v. P. R. R. Co., 245 U. S. 441, 62 L. ed. 385; Gilmer v. Yazoo R. R. Co., 4 F. (2d) 963. The Safety Appliance Act made

the furnishing of certain equipment obligatory, and so the Boiler Inspection Act extended the duties of the carrier to the construction and care of the locomotive and its tender, with the appurtenances thereto. The requirements have been set forth in rules promulgated by the proper authority on March 13, 1911, and supplemental orders. If the defect complained of is not one prohibited, then a failure to obey will not be held, as a matter of law, negligence per se. In the present case, there was no lack of compliance with a statutory duty, and recovery could be had only if negligence had been established, and it further appeared that the risk was not an ordinary one assumed by the plaintiff: Nelson v. Southern R. Co., 246 U. S. 253, 62 L. ed. 699; Davis v. Maury, Ad. Op. Sup. Ct., Feb. 2, 1925, p. 205.

The appellant relies particularly on three decisions as sustaining a contrary doctrine. Two cited were lower court cases, subsequently reversed on appeal, and there is no need for a discussion of the facts involved, though readily distinguishable from those appearing here: B. & O. R. R. Co. v. Groeger, 288 Fed. 321, reversed by the United States Supreme Court, Ad. Op., Feb. 2, 1925, p. 164; Ford v. McAdoo, 178 N. Y. Supp. 631, reversed in 231 N. Y. 155, 131 N. E. 874, writ of error denied, sub nom. Ford v. Davis, 257 U. S. 641. The ruling in Miller v. C., B. & Q. R. R. Co., 167 N. W. 117, rested on the question as to whether there was affirmative evidence of negligence requiring submission to the jury, it being held that the federal acts had no application in determining the right of plaintiff to recover. In Great Northern Ry. Co. v. Donaldson, 246 U. S. 121, 62 L. ed. 616, also cited, there was proof of negligence on the part of defendant. Many other authorities have been referred to by appellant, usually cases in which a positive violation of the federal requirements appear, such as the failure to provide proper couplers, or hand-holds, but none are controlling of the present situation.

There was no evidence of any negligence in the present case. The manner of fastening the bolt was not shown to have been unusual, or not made in the customary way, and the defect complained of was of a condition obvious to all. It is urged that proof should have been received to show the possibility that its position might have been reversed, and the rough side turned toward the boiler. No offer was made to establish this to be the ordinary practice of railroads under like circumstances, and that, therefore, the failure to so install was evidence of negligence. Indeed, such proposed construction would seem to be in conflict with the trend of thought expressed by the Interstate Commission in its rules, as already noted.

The court properly rejected the testimony, referred to in the second assignment of error, to show that the bolt could have been reversed in position, so that the end would have projected inward, and that access to the nuts could have been had if placed in that direction. Nor can we see any error in refusing to permit the same witness to testify as to the extension of the ends of bolts on other engines. The purpose was not to show the customary manner of protection in general use, but merely to state that the witness, a brakeman, had not observed, on engines upon which he had been engaged, any bolts which "stuck out," as this one did. The only duty imposed on the defendant was to furnish appliances reasonably safe and suitable, and not to provide the latest and best, or to abandon those which were efficient, on the discovery of later improvements: 1 Roberts Liability of Carriers 927. There was no attempt made to show by the second witness that the projection of the bolt was dangerous, or to prove the practice and custom of other railroads, as indicating a want of ordinary care on the part of defendant, but merely that Shimmel had not before seen bolts installed in like manner.

We conclude that the record fails to disclose any evidence of negligence, or any material error in ruling upon the proposed evidence, above referred to. Under the

circumstances, it was the duty of the judge to enter a compulsory nonsuit, since the testimony, with all the inferences which the jury could justifiably draw therefrom, was insufficient to support a finding in favor of the plaintiff: B. & O. R. R. Co. v. Groeger, supra; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 45 L. ed. 361.

The judgment is affirmed.